[No. E031943. Fourth Dist., Div. Two. Sept. 12, 2002.]

WATERMAN CONVALESCENT HOSPITAL, INC., Plaintiff and Appellant, v.
STATE DEPARTMENT OF HEALTH SERVICES, Defendant and Respondent.

## COUNSEL

Tyler & Wilson, Elizabeth Plott Tyler and Francesca Brotman-Orner for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Charlton C. Holland III, Assistant Attorney General, Jennifer S. Cady and S. Paul Bruguera, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**RAMIREZ, P. J.**—Plaintiff Waterman Convalescent Hospital, Inc. (Waterman) appeals from a judgment of dismissal entered against it after defendant State Department of Health Services' (DHS) demurrer to the first amended complaint was sustained without leave to amend. The trial court found that Waterman's action was barred by the statute of limitations set forth in Health

and Safety Code section 1428, subdivision (b).[1] The Appellate Division of the San Bernardino Superior Court, in a decision certified for publication, held that the statute of limitations did not bar the action, and reversed the trial court. On our own motion, in accordance with rule 62(a) and (b) of the California Rules of Court, we ordered transfer of this case to secure uniformity of decision and to settle an important question of law. After undertaking an independent review, we agree that the trial court must be reversed.

## FACTS AND PROCEDURAL HISTORY

As this is an appeal after a demurrer was sustained without leave to amend, the operative facts are those alleged in the first amended complaint. Waterman does business as Plott Nursing Home. DHS is the state agency charged with regulating such facilities pursuant to the Long-Term Care, Health, Safety, and Security Act of 1973 (the Act). (§ 1417 et seq.) It has the authority to issue citations and to impose civil penalties for violations of applicable health laws.

On April 20, 2000, DHS issued a citation against Waterman for class "A" violations. Within 15 days of its receipt of the citation, on May 8, 2000, Waterman notified DHS of its intent to contest the citation and requested a citation review conference (CRC). On September 7, 2000, Waterman notified DHS of its intent to withdraw its request for a CRC and to instead contest the citation in court. It then filed the instant action within 90 days of its notification to DHS.

Waterman filed its complaint for an order dismissing the citation on September 11, 2000. DHS demurred on the ground that Waterman's action was barred by the statute of limitations in section 1428, subdivision (b), which requires that any court action be filed within 90 days of notification to DHS of the intent to contest a citation. DHS argued that even if Waterman's request for a CRC could be construed as a notice of intent to contest the citation, the lawsuit was not filed until 126 days after that notice, some 36 days late. DHS also argued that since no CRC had been held, and no decision issued, Waterman could not base its court action on that alternative provided by the statute.

Waterman countered that DHS had been dilatory in scheduling the CRC. While waiting for DHS to schedule the CRC, Waterman was issued a second citation, which, even though the first citation remained unsettled, resulted in

---

[1]Further statutory references will be to the Health and Safety Code unless otherwise indicated.

a treble fine. (§ 1428, subd. (h).) In addition, because of the outstanding citations, Waterman faced a potential 500 percent increase in its insurance premiums. However, that increase could be mitigated by prompt resolution of the citation disputes. For these reasons, Waterman determined that it could no longer accept the laggardly pace of the administrative remedy, and immediately sought resolution through its alternative judicial remedy. The demurrer was heard on November 14, 2000, at which time the trial court begrudgingly agreed with DHS that the action appeared to be barred by the applicable statute of limitations. Nevertheless, it granted Waterman the opportunity to amend its complaint.

The operative first amended complaint was filed on December 14, 2000. Waterman alleged that the citation was both procedurally and substantively defective, and therefore must be dismissed. It also alleged that it was excused from pursuing its optional administrative remedy (the CRC) on the grounds that it would be futile and would cause irreparable injury, and because DHS unreasonably delayed in conducting the hearing. DHS again demurred on the basis of the statute of limitations. Waterman's request to file additional briefing was granted and the demurrer was set for hearing on March 15, 2001. On March 20, 2001, the decision was issued sustaining the demurrer without leave to amend based upon the expiration of the statute of limitations. The case was dismissed, pursuant to DHS's motion, on April 23, 2001. This appeal followed.

## DISCUSSION

The question that we must consider is whether Waterman's action is barred by the statute of limitations in section 1428, subdivisions (a) and (b). To do so, we must interpret the statute, an action that we undertake de novo. (*Catalina Investments, Inc. v. Jones* (2002) 98 Cal.App.4th 1, 6 [119 Cal.Rptr.2d 256].) Section 1428, subdivision (a) provides, "If the licensee desires to contest a citation or the proposed assessment of a civil penalty therefor, the licensee shall use the processes described in subdivisions (b) and (c) for classes 'AA,' 'A,' or 'B' citations. . . ." Subdivision (b) then states, "[i]f a licensee notifies the director that he or she intends to contest a class 'AA' or a class 'A' citation, the licensee may first, within 15 business days after service of the citation, notify the director in writing of his or her request for a citation review conference. The licensee shall inform the director in writing, within 15 business days of the service of the citation or the receipt of the decision of the director's designee after the citation review conference, of the licensee's intent to adjudicate the validity of the citation in the municipal or superior court in the county in which the long-term

health care facility is located. . . . The action shall be filed no later than 90 calendar days after a licensee notifies the director that he or she intends to contest the citation, or no later than 90 days after the receipt of the decision by the director's designee after the citation review conference, and served not later than 90 days after filing." Subdivision (a) also indicates, "If the licensee desires to contest a decision made after the citation review conference, the licensee shall inform the director in writing within 15 business days after he or she receives the decision by the director's designee." (§ 1428, subds. (a) & (b).)

This statute is not a model of clarity. Thus, we resort to long-held rules of statutory construction. ▪ " 'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute. [Citations.] . . . [However,] "language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." [Citations.] Thus, "[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." [Citation.] . . . [Nor do we] construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." [Citation.]' [Citation.] We must also consider 'the object to be achieved and the evil to be prevented by the legislation. [Citations.]' [Citation.]" (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276 [87 Cal.Rptr.2d 222, 980 P.2d 927].)

▪ In its distilled form, section 1428 provides a facility charged with a class "A" violation with a choice. The facility must inform the director of its intent to contest the citation. It may first, within 15 business days of service of the citation, request a CRC. It can also, within 15 business days of service of the citation, inform the director of its intent to adjudicate the validity of the citation in the trial court. If it chooses the second option, the action shall be filed within 90 calendar days after the director was notified of the intent to contest. If, however, it chooses the first option, it may still file a court action. Subdivisions (a) and (b) both provide that if, after receipt of the CRC decision, a facility desires to contest the action in court, it must so notify the director. This notice must be within 15 business days after receipt of the CRC decision. The action must then be filed within 90 days after receipt of the CRC decision.

The statute does not deal expressly with the problem that we encounter here; to wit: What is the time limit for filing an action when a CRC has been

requested but it is alleged that it has not been provided within a reasonable time? Rather than choosing to file a petition for a writ directing the DHS to promptly conduct a CRC, Waterman withdrew its request and filed this action. Thus, we must now determine whether this case should be barred because Waterman did not wait for the CRC decision that would have triggered its right to file it.

When a statute is silent on a point, the courts resort to statutory interpretation, the rules concerning which have already been set out. (See, e.g., *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 663 [25 Cal.Rptr.2d 109, 863 P.2d 179].) Our mandate is to determine legislative intent consistent with enforcing the purpose of the law. One of the express purposes of the Act is the *prompt* issuance of civil sanctions against facilities that violate health and safety regulations. (§ 1417.1.) Since sanctions may be avoided until a citation contest is terminated in favor of the state agency (§ 1428, subd. (e)), it follows that an express goal of the Act is the prompt resolution of citation contests.

The relatively short time periods for the completion of all actions related to enforcement of the Act also speak to the Legislature's intent to ensure quick action. For example, from the time he or she learns that an alleged violation has occurred, the director has only 24 hours to issue to a facility a notice of correction and intent to issue a citation. (§ 1423, subd. (a).) Any citation must be served upon the facility within three days of the inspection, unless the facility authorizes an extension of time in writing. (*Ibid.*) The facility must notify the director of the intent to contest a citation within 15 business days of its initial issuance or affirmation after a CRC. (§ 1428, subds. (a)-(c).) Suit must be filed within 90 days of notice to the director and served within 90 days of filing. (*Ibid.*) These are comparatively very short time periods. (See, e.g., generally, Code Civ. Proc., §§ 315-349¾, 583.210, subd. (a).) If no at-issue memorandum is filed within six months of the DHS's answer, a court action is subject to dismissal. (Health & Saf. Code, § 1428, subd. (b).) Actions under section 1428 are to "be set for trial at the earliest possible date and shall take precedence on the court calendar over all other cases . . . . Times for responsive pleading and for hearing the proceeding shall be set . . . with the object of securing a decision as to subject matters at the earliest possible time." (§ 1428, subd. (j).)

These time limits demonstrate the legislative purpose of collecting penalties and correcting violations quickly. Prompt resolution of alleged violations is critical to the DHS when the facility is in violation, and critical to the facility when it is not. In the first instance, prompt adjudication promotes

speedy rectification of deficiencies for the protection of long-term health-care patients, as well as the timely collection of appropriate fines. On the other hand, prompt adjudication in favor of a facility quickly removes a cloud from its record that could result in a loss of business and/or the types of difficulties that Waterman alleges to have suffered. (§§ 1422.5, 1428, subd. (k) [citations, including those under challenge, are a matter of public record].) These purposes would be thwarted, not promoted, if section 1428 was interpreted as DHS suggests, to give it a relatively unlimited period of time to hold a CRC, during which time a facility could not otherwise seek a final resolution of the citation challenge on the merits.

In support of the position that prompt resolution of citation contests is mandated by the Legislature, Waterman argues that section 1428.2 requires that a CRC hearing be conducted within 35 days of a facility's request. Conversely, DHS asserts that section 1428.2 relates to a bygone time when actions concerning citation contests were filed by the Attorney General, not by the facility.[2] That requirement having been changed, DHS argues that this code section has been impliedly repealed and no longer has any application. We disagree. While the first sentence of the statute, dealing with actions filed by the Attorney General, is no longer applicable, under rules of statutory construction, the second and third sentences, which deal solely with the timing of a CRC hearing, and which do not otherwise conflict with the overall statutory scheme, do apply. (*El Dorado Palm Springs, Ltd. v. City of Palm Springs* (2002) 96 Cal.App.4th 1153, 1160-1161 [118 Cal.Rptr.2d 15].) Still, the statute indicates that "at the facility's request, the department shall conduct a [CRC] within 35 days from the date of the request for a [CRC]. Unless a conference is requested by the facility, this section shall not require the department to conduct the conference within the 35-day period." (§ 1428.2.) Waterman has raised this issue at its peril because in the instant case there is no indication that its request for a CRC sought that the hearing be conducted within 35 days. We are not, therefore, convinced that the DHS violated this statute by not providing a CRC within that time. And, while our opinion does not turn on this argument, we point out that Waterman's failure to make the request does damage to its claim to have acted in good faith while the DHS engaged in unreasonable delay. Nevertheless, the request is not mandatory and we find it true that section 1428.2 provides further evidence that the Legislature intended that citation disputes be resolved quickly.

---

[2] Prior to a 1992 change in the law, once a facility notified the director of its intent to contest a citation, the onus was upon the Attorney General to take action to enforce the citation. (See Historical and Statutory Notes, 38B West's Ann. Health & Saf. Code (2000 ed.) foll. § 1428, p. 59.)

Our holding is also consistent with the purposes of the more general body of law regarding statutes of limitations. ▓ "Limitations statutes are intended to enable defendants to marshal evidence while memories and facts are fresh and to provide defendants with repose for past acts. [Citations.] . . . [T]he legislative goal underlying limitations statutes is to require diligent prosecution of known claims so that legal affairs can have their necessary finality and predictability and so that claims can be resolved while evidence remains reasonably available and fresh." (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 755-756 [76 Cal.Rptr.2d 749, 958 P.2d 1062].) " ' "[T]he right to be free of stale claims in time comes to prevail over the right to prosecute them." [Citations.] The statutes, accordingly, serve a distinct public purpose, preventing the assertion of demands[,] which through the unexcused lapse of time, have been rendered difficult or impossible to defend. . . . [Citation.]' " (*Thomas v. Gilliland* (2002) 95 Cal.App.4th 427, 434 [115 Cal.Rptr.2d 520].) ▓ Interpreting section 1428 to enable a facility to achieve a more timely resolution of the claims asserted advances the policies behind statutes of limitations. On the other hand, DHS's interpretation, which would require facilities to wait an indefinite period of time before filing a court action (until the DHS itself provided a CRC and resulting decision), is contrary to the policy of promoting the litigation of fresh, rather than stale claims.

Further, interpreting the statute as we do is entirely consistent with the doctrine of equitable tolling. ▓ The purpose of that doctrine is to soften the harsh impact of a technical application of a statute of limitations that might otherwise prevent a good faith litigant from obtaining a trial on the merits. (*Addison v. State of California* (1978) 21 Cal.3d 313, 316 [146 Cal.Rptr. 224, 578 P.2d 941].) The application of the doctrine "requires timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." (*Id.* at p. 319.) These elements are present here, as has been demonstrated in analogous cases. For example, in *Myers v. County of Orange* (1970) 6 Cal.App.3d 626 [86 Cal.Rptr. 198], the plaintiff had the same two options as did Waterman. She could sue immediately in court, or she could pursue an administrative remedy. It was assumed there, as here, that the administrative remedy was not a prerequisite to filing the action in court. (*Id.* at p. 634.) In spite of the defendant's argument to the contrary, the appellate court held that the limitations period on the judicial action was tolled while the plaintiff was pursuing the administrative remedy. (*Id.* at pp. 634-637.) ▓ In the instant action, the statute of limitations on the judicial remedy would have been tolled so long as Waterman was, in good faith, pursuing its administrative remedy, a CRC. The doctrine of equitable tolling therefore supports our interpretation of section 1428.

We conclude that under section 1428, when a facility chooses to contest a citation by requesting a CRC, the limitations period on the judicial remedy does not begin to run until the request for a CRC is withdrawn, or consistent with the statute's express terms, until the CRC decision is received by the facility. Applying that holding to this case, the limitations period for the commencement of a judicial action did not begin to run until Waterman withdrew its request for a CRC. Thus, it had 15 business days from the time of its withdrawal of the CRC request to notify the director of its intent to file a court action, and 90 calendar days after that notice in which to do so. (§ 1428, subd. (b).) Waterman's pleadings state that it notified the director of its intent to file a court action at the same time that it withdrew its CRC request, and it filed the action four days later. Thus, according to the first amended complaint, this action was well within the statute of limitations.

## DISPOSITION

The judgment is reversed. Plaintiff to recover its costs on appeal.

Hollenhorst, J., and Richli J., concurred.