Filed 9/10/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>CHARLES LEROY CHRISTMAN,<br><br>      Defendant and Respondent. | A138287<br><br>(San Francisco City & County<br>Super. Ct. No. 103687) |

## I.

## INTRODUCTION

The Sexually Violent Predator Act (SVPA) (Welf. & Inst. Code, § 6600 et seq.)[1] provides that, under certain circumstances, a person who has been committed as a sexually violent predator (SVP) may thereafter be conditionally released into the community under a program of outpatient supervision and treatment. (See § 6608–6609.3.) The SVPA also provides that certain conditionally released SVPs who have a history of sexual misconduct with children "shall not be placed within one-quarter mile" of a school providing instruction to children from kindergarten to grade 12. (§ 6608.5,

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

subd. (f).)[2]  However, the statute does not specify the method a court should use to measure the distance between the SVP's placement, or residence, and the school.

In the sole assignment of error, Contra Costa County asserts the trial court incorrectly used the "closest practical walking distance" instead of using a straight line to measure the distance between the residence of Charles Leroy Christman (Christman), an adjudicated SVP who falls within the provisions of section 6608.5, subdivision (f), and a nearby elementary school.  Computing the distance between Christman's residence and the school using a pedestrian-route method resulted in the location of Christman's residence being compliant with section 6608.5, subdivision (f), and the trial court approving his residential placement over Contra Costa County's objection.

We hold, as a matter of first impression, that in determining compliance with the residency restriction contained in section 6608.5, subdivision (f), the distance between Christman's residence and the elementary school should have been calculated using the straight-line method rather than a pedestrian-route method.  Consequently, we reverse, because calculations using the straight-line method place Christman's residence less than one-quarter mile from the nearby elementary school.

## II.

## FACTS AND PROCEDURAL HISTORY

The SVPA was enacted to identify incarcerated individuals who suffer from mental disorders that predispose them to commit violent criminal sexual acts, and to confine and treat such individuals until it is determined they no longer present a threat to society.  (See generally *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1143-1144.)  After Christman served his prison term for multiple sex offenses against boys under the

---

[2]  Section 6608.5, subdivision (f), reads:  "Notwithstanding any other provision of law, a person released under this section shall not be placed within one-quarter mile of any public or private school providing instruction in kindergarten or any of grades 1 to 12, inclusive, if either of the following conditions exist: [¶] (1) The person has previously been convicted of a violation of Section 288.5 of, or subdivision (a) or (b), or paragraph (1) of subdivision (c) of Section 288 of, the Penal Code.  [¶] (2) The court finds that the person has a history of improper sexual conduct with children."

2

age of 15 in public parks, he was determined to be a SVP on January 30, 1997, and thereafter was committed to Atascadero State Hospital.

On February 10, 2012, after approximately 15 years of in-patient treatment, the court heard Christman's petition for conditional release brought under section 6608. That section provides that if the court determines the committed person would no longer be a danger to others while under supervision and treatment in the community, the court "shall order the committed person placed with an appropriate forensic conditional release program operated by the state for one year." (§ 6608, subd. (e).) Following the hearing the trial court granted Christman's section 6608 petition for outpatient status after finding that he could be safely and effectively treated in an outpatient program. The court ordered the Department of State Hospitals (the Department) to locate housing for him. That ruling itself is not challenged by Contra Costa County in this appeal.

The Department's designee, Liberty Healthcare Corporation (Liberty Healthcare), attempted to find suitable housing for Christman in San Francisco, the county where Christman was originally tried for his sexual crimes against minors. On or about June 27, 2012, Liberty Healthcare advised the court that it had exhausted all housing stock San Francisco, but had been unsuccessful in finding an appropriate residence. On June 27, 2012, the court found good cause to expand the housing search to other Bay Area counties. On November 8, 2012, the court determined that outpatient treatment and supervision could properly occur in Contra Costa County, as this was Christman's last county of domicile at the time of his commitment to the California Department of Corrections and Rehabilitation. (See § 6608.5, subd. (a).)

In December 2012, Liberty Healthcare located housing at a particular address in Bay Point in Contra Costa County and recommended placement there. Notice was given to the Contra Costa County District Attorney so that the county could "weigh in on the placement itself."

The court held a hearing on February 26, 2013, during which evidence was taken and arguments were made concerning Christman's proposed placement, which was near the Willow Cove Elementary School (the school). Among the issues in dispute was how

the residency restriction in section 6608.5, subdivision (f), should be measured. Contra Costa County argued the appropriate method to measure whether Christman's residence was farther than one-quarter mile from the school was by a straight-line measurement. It is undisputed that using the straight-line method to calculate the distance put Christman's residence within a prohibited area and would compel his relocation elsewhere.

The court ultimately rejected the straight-line method, and held the appropriate measurement was to use a pedestrian route traveled, a method of measurement that took intervening structures and obstacles into account. Using this method increased the distance between Christman's residence and the school, and placed his residence more than one-quarter mile away from the school. Therefore, the court ordered that Christman's placement be implemented on or before March 12, 2013. This appeal followed.[3]

## III.

## DISCUSSION

The facts giving rise to this appeal are undisputed. Christman concedes he "has the requisite convictions and sexual history to fall within the provisions of [section 6608.5] subdivision (f)." Given this concession, the only question concerns whether Christman's new residence in Contra Costa County is located within a quarter-mile of a nearby elementary school. The answer hinges upon how the distance from the residence to the school is to be measured.

Statutory interpretation is necessary to resolve this issue because the provisions of section 6608.5, subdivision (f), are silent on the question of how "one-quarter mile" is to be measured. (See *Waterman Convalescent Hospital, Inc. v. State Dept. of Health Services* (2002) 101 Cal.App.4th 1433, 1439 ["When a statute is silent on a point, the

---

[3] On appeal, Christman questions whether Contra Costa County was authorized to file an appeal on behalf of the People of the State of California. However, authorization is provided in the form of a letter from the Attorney General filed with this court on May 8, 2013, indicating "[t]he District Attorney of Contra Costa County will be representing the People in the above-entitled case, in which the People are appellant."

4

courts resort to statutory interpretation"].)  The proper interpretation of a statute and its application to undisputed facts is a question of law, and thus also subject to de novo review.  (*Lozada v. City and County of San Francisco* (2006) 145 Cal.App.4th 1139, 1149.)  Therefore, this court is not bound by the trial court's interpretation of section 6608.5, subdivision (f), but instead must make an independent judgment as to the proper statutory interpretation.  (See *Union Bank of California v. Superior Court* (2004) 115 Cal.App.4th 484, 488 ["The proper interpretation of statutory language is a question of law which this court reviews de novo, independent of the trial court's ruling or reasoning"].)

"The cardinal rule governing statutory interpretation is to 'ascertain the legislative intent so as to effectuate the purpose of the law.  [Citations.]'  [Citation.]"  (*Campbell v. Arco Marine, Inc.* (1996) 42 Cal.App.4th 1850, 1856.)  If the statutory language is susceptible of more than one reasonable interpretation, the courts look to "extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.  [Citations.]"  (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1008.)  We interpret the statute using " 'reason, practicality, and common sense to the language at hand.'  [Citation.]"  (*Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572, 583.)  We must give the words of the statute a workable and reasonable interpretation keeping in mind the consequences that will flow from our interpretation.  (*Watkins v. County of Alameda* (2009) 177 Cal.App.4th 320, 336.)

There is no question that the legislative intent behind the passage of section 6608.5, subdivision (f), was to create " 'predator free zones around schools . . . to prevent sex offenders from living near where our children learn and play.'  [Citation.]"  (*In re E.J.* (2010) 47 Cal.4th 1258, 1271 [analyzing similar residency restriction for paroled sex offenders].)  As noted by an out-of-state court examining a similar statute, "it is reasonable to believe that a law that prohibits child sex offenders from living within [a measurable distance] of a school will reduce the amount of incidental contact child sex

5

offenders have with the children attending that school and that consequently the opportunity for the child sex offenders to commit new sex offenses against those children will be reduced as well." (*People v. Leroy* (2005) 828 N.E.2d 769, 781.)

Christman maintains that residency restrictions, such as the one contained in section 6608.5, subdivision (f), are "based on the myth" that they make children safer because the empirical evidence indicates that the majority of child sex abuse cases involve relatives or acquaintances. He also cites data indicating that one of the reasons "for the escalating homelessness rate [for sexual offenders] is due to the unavailability of compliant housing . . . ." These arguments are not material to our interpretation of section 6608.5, subdivision (f), and are more appropriate for the Legislature's consideration in enacting the law. "As a court, we have a 'limited role' in interpreting statutes enacted by the Legislature. [Citation.] Our role is 'not to establish policy' [citation] or to 'inquir[e] into the "wisdom" of' the Legislature's 'policy choices.' [Citation.] It is to 'follow the Legislature's intent . . . " ' "whatever may be thought of the wisdom, expediency, or policy of the act." ' " [Citation.]' [Citation.]" (*Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 306-307, dis. opn. Chin, J.)

Although no California court has weighed in on the precise issue before us, we note courts have generally favored the straight-line method of measurement in statutes that require distance to be measured, but do not specify the method of measurement. (See 79 Am.Jur.2d, Weights & Measures, § 46, p. 108 ["In the absence of any specific statutory provision governing the manner of measurement of distances, distance is to be measured along the shortest straight line . . . ."].) For example, in a case arising under a statute prohibiting liquor sales within a mile and a half of a university, our Supreme Court has held that in the absence of a legislative directive on the method of measurement, the prescribed distance must be measured in a straight line rather than in some other manner, such as by the usually traveled route. (*Bd. of Trustees v. State Board of Equalization* (1934) 1 Cal.2d 784, 786; accord, *Gunn v. State Board of Equalization* (1954) 123 Cal.App.2d 283, 288.)

6

Perhaps more pertinent to the case before us, out-of-state courts have uniformly found that when a statute's legislative purpose is to afford young children going to and from school a zone of protection from harmful influences, such as drug dealers, that purpose is best achieved by using a straight-line measurement rather than a pedestrian-route measurement. For example, in *United States v. Ofarril* (2d Cir. 1985) 779 F.2d 791, the court rejected the argument that the distance in creating a drug-free zone should be measured by a pedestrian route rather than a straight line, stating, "Such a tortuous reading would violate the plain meaning of the statute. Moreover, it would generate needless and time-consuming debate, and ultimately hamper the statute's enforcement. [Citations.]" (*Id.* at p. 792.)

Agreeing with this rationale, the Eleventh Circuit observed in *U.S. v. Clavis* (11th Cir. 1992) 956 F.2d 1079, that use of a walking-route measurement would lead to situations where a drug "trafficker could operate free of the statute by placing his operation within tossing distance of the schoolyard fence if he could find—or create—a long enough footpath leading to it. . . . These uncertainties created by the way a child meanders, or a drug dealer or buyer walks, is antithetical to the expressed intention of Congress to create a drug-free zone around each school. The way to create a definite and identifiable zone is by extending radii outward around the property on which the school is located." (*Id.* at p. 1088, fn. omitted.) Other courts have similarly endorsed the straight-line method rather than a pedestrian-route method. (See *Howard v. State* (Fla. Dist. Ct. App. 1991) 591 So.2d 1067, 1068 [statute "effects more serious punishment of drug transactions which occur within 1,000 feet of certain schools as the crow flies, not as the car drives" because legislative intent was "to measure within a 1,000-foot radius, not by local idiosyncrasies of pedestrian or automobile travel"]; *Commonwealth v. Spano* (1993) 414 Mass. 178, 181 ["no reason why the measurement should not be in a straight line from the school's boundary line to the site of the illegal drug activity"].)

We find these cases to be well-reasoned and agree with the rationale expressed in each of them. The straight-line method provides a predictable, objectively cognizable measurement which enables the statute to achieve "predator free zones" around schools–

7

–which is the obvious purpose for which the residency restriction in section 6608.5, subdivision (f), was enacted. (*In re E.J.*, *supra*, 47 Cal.4th at p. 1271.) By contrast, use of the more arbitrary and subjective pedestrian-route method would serve to undermine the goal of the statute as it would submerge the distance calculation in ambiguity and subject the route selection to continuous, and perhaps shifting, conclusions as to what is the most appropriate pedestrian route. Moreover, using the straight-line method takes into consideration the less predictable ambulatory practices of young children going to and coming from school. As the court sensibly reasoned in *United States v. Watson* (9th Cir. 1989) 887 F.2d 980, "Requiring speculation about pedestrian routes would create uncertainty in a statute which was meant to establish clear lines of demarcation. . . . School children are not known for taking what adults may conclude would be the most appropriate routes to and from school. Only a straight line measurement creates a readily ascertainable zone of protection." (*Id.* at pp. 980-981.)

Significantly, our conclusion is also consistent with the administrative construction of an analogous statute found in the Penal Code setting out residency restrictions for sexual offenders on parole. Among other restrictions, Penal Code section 3003.5, subdivision (b) prohibits a registered sexual offender on parole from "resid[ing] within 2000 feet of any public or private school, or park where children regularly gather."[4] However, as in section 6608.5, subdivision (f), the Legislature failed to specify how the 2000 feet was to be measured. The administrative construction of this statute directs parole supervisors to measure the distance from the parolee's residence and the nearest park or school by a straight-line method rather than a pedestrian walking distance.

---

[4] We agree with the trial court that the residency restriction in Penal Code section 3003.5, subdivision (b), is limited to a "person" previously identified in subdivision (a)— "a person [who] is released on parole after having served a term of imprisonment in state prison for any offense for which registration is required pursuant to Section 290." Therefore, it does not apply to Christman as he was not a person on parole. However, we note this issue, as well as numerous other issues regarding Penal Code section 3003.5's residency restriction, is currently pending before the California Supreme Court. (*People v. Mosley* (2010) 188 Cal.App.4th 1090, rev. granted Jan. 26, 2011, S187965.)

"[T]he parole agent shall use a Global Positioning System (GPS) handheld device to determine whether any boundary of the public or private school or park where children regularly gather, is within 2,000 feet of the threshold of the primary entrance of the proposed residence *'as the crow flies,' as a direct point-to-point aerial transit path, not as a street or path route*." (Cal. Code Regs., tit. 15, § 3571, subd. (e)(4), italics added.)

This administrative construction of an analogous section of the Penal Code is consistent with our interpretation of section 6608.5, subdivision (f), and leads to a rational and reasonable result. (*Estate of Burden* (2007) 146 Cal.App.4th 1021, 1028 ["legislation on the same or similar subjects" may be examined "to ascertain the Legislature's probable intent"]; see also *In re Mark K.* (1984) 159 Cal.App.3d 94, 106 ["When a statute is ambiguous . . . its intent may be gathered from other statutes dealing with the same subject matter"].)

Accordingly, we hold the "one-quarter mile" residency restriction contained in section 6608.5, subdivision (f), should be measured by a straight-line measurement method "as the crow flies," irrespective of buildings, roads, or other physical barriers, permanent or temporary, and should be measured from the boundary of the school's property to the threshold of the primary entrance of the SVP's residence.

## IV.

## DISPOSITION

The court's placement order is reversed. The matter is remanded to the trial court

for further proceedings under section 6608.5, subdivision (f), consistent with this opinion. Costs on appeal to Contra Costa County.

 

_____
RUVOLO, P. J.

We concur:

_____
RIVERA, J.

_____
HUMES, J.

* Presiding Justice of the Court of Appeal, First Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:                          San Francisco Superior Court

Trial Judge:                          Hon. Garrett L. Wong

Counsel for Appellant:                Mark A. Peterson
                                      San Francisco District Attorney

                                      Derek Butts
                                      Deputy District Attorney

Counsel for Respondent:               First District Appellate Project
                                      Jonathan Soglin, Executive Director
                                      Richard Such, Staff Attorney