Filed 8/10/16

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CLIFTON LEE GIBSON,<br><br>    Defendant and Appellant. | E062624<br><br>(Super.Ct.No. FVI04156)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Eric M. Nakata, Judge.  Affirmed.

Center for Juvenile Law and Policy, Loyola Law School, Sean K. Kennedy, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

In 1996, defendant Clifton Lee Gibson was tried as an adult and convicted of first degree murder with special circumstances (Pen. Code, §§ 187, subd. (a), 190.2, subd.

1

(a)(17)),[1] assault with a firearm (§ 245, subd. (a)(2)), and robbery (§ 211), which were committed when he was 17 years old, with two adult codefendants. He was ultimately sentenced to life without possibility of parole (LWOP) for the murder, consecutive to a determinate term of 12 years, four months, in prison. In 2014, he filed a petition to recall his sentence pursuant to section 1170, subdivision (d)(2), which was denied by the trial court on the ground he failed to demonstrate he had been rehabilitated or that he was remorseful. Defendant appealed.

On appeal, defendant argues the trial court (1) improperly limited applicability of section 1170, subdivision (d)(2) relief to juvenile defendants who did not actually kill the victim; (2) abused its discretion in denying the petition despite evidence to support the existence of all the statutory factors; and (3) "flouted *Miller* and *Gutierrez*."[2] We affirm.

## BACKGROUND

The facts of the crime are taken from our opinion in the original appeal filed by defendant following his conviction (*People v. Gibson* (Sept. 9, 1998, E019971) [nonpub. opn.]): On June 8, 1994, in Big Bear, California, defendant, his brother Daniel, and a friend Jeffory Paxton approached a station wagon in which four men were sleeping. (Typed opn., p. 3.) The defendant and his companions wanted money for gas. (*Ibid.*) Paxton banged on the driver's side window with a cocked nine millimeter gun and

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

[2] Referring to *Miller v. Alabama* (2012) 567 U.S. ___ [183 L.Ed.2d 407, 132 S.Ct. 2455], and *People v. Gutierrez* (2014) 58 Cal.4th 1354 (*Gutierrez*).

2

demanded the men's wallets. (*Ibid.*) The men complied with Paxton's request offering no resistance. (*Ibid.*) Paxton's gun discharged, and subsequently defendant fired a shot from his .22 revolver. (*Ibid.*) The bullet from defendant's revolver struck and killed one the men, while the bullet from Paxton's gun struck another of the men, who suffered permanent injuries. (*Ibid.*)

After the shooting, defendant and his companions drove away, crashing their car during their flight. (*People v. Gibson, supra,* E019971, p. 3.) At the time of the shooting, defendant was 17 years old, and had no prior criminal record. (*Ibid.*) Defendant alleged Paxton was the ringleader and primary participant in the crime. (*Ibid.*)

Defendant was charged with murder with special circumstances (§§ 187, subd. (a), 190.2, subd. (a)(17) [felony murder], count 1); attempted murder (§§ 664, 187, subd. (a), count 2); and robbery (§ 211, count 3). It was further alleged that in the commission of all three counts, defendant and Paxton personally used a firearm (§ 12022.5, subds. (a) & (d)), and that defendant and Paxton personally inflicted great bodily injury as to the robbery victim. (§ 12022.7.)[3] Following a jury trial, defendant was convicted of first degree murder with a true finding of the felony-murder special circumstance, assault with a firearm (§ 245, subd. (a)(2)) as a lesser offense within attempted murder on count two, and robbery. Defendant was sentenced to LWOP on count one, consecutive to a

---

[3] Additional allegations that a principal was armed with a firearm (§ 12022, subd. (a)(1) and relating to Paxton's prior convictions were pled, but are not relevant here.

determinate sentence of 18 years, four months for the balance of the convictions and enhancement allegations.

In 1998, on direct appeal, the convictions were affirmed, but the matter was remanded for resentencing to correct the improper imposition of multiple enhancements for count three. (*People v. Gibson*, *supra,* E019971, p. 9.) On remand, defendant was resentenced to LWOP followed by consecutive determinate term of 12 years, four months, for the balance of the convictions and enhancement allegations.

On April 25, 2014, defendant filed a petition for recall of his sentence pursuant to section 1170, subdivision (d)(2). The People opposed the petition. After an evidentiary hearing, the court denied the petition. The court concluded that section 1170, subdivision (d)(2) applied to an aider and abettor, or the nonkiller, and found that defendant did not establish he had been rehabilitated or that he felt remorse. Defendant appeals this ruling.

## DISCUSSION

1. *Development of Statutory and Decisional Law Affecting Sentences for Juveniles Convicted of Special Circumstances Murder*.

In order to provide context for our discussion, we provide a brief review of the statutory enactments and landmark decisions which govern our analysis. We begin with the year of defendant's offense, 1994.[4] At that time, Penal Code section 190.5,

---

[4] A criminal defendant is entitled to the application of statutes in effect at the time his offense was committed. (See *Miller v. Florida* (1987) 482 U.S. 423, 435-436 [107 S.Ct. 2446, 96 L.Ed.2d 351].)

4

subdivision (a), prohibited the imposition of the death penalty upon any person who was under the age of 18 at the time of the commission of the crime.

Subdivision (b) of section 190.5 provided that "The penalty for a defendant found guilty of murder in the first degree, in any case in which one or more special circumstances enumerated in Section 190.2 or 190.25 has been found to be true under Section 190.4, who was 16 years of age or older and under the age of 18 years at the time of the commission of the crime, shall be confinement in the state prison for life without the possibility of parole or, at the discretion of the court, 25 years to life." Prior to 2014, this section was interpreted to mean that 16- or 17-year-olds who commit special circumstance murder *must* be sentenced to LWOP, *unless* the court, in its discretion, finds good reason to choose the less severe sentence of 25 years to life. (*People v. Guinn* (1994) 28 Cal.App.4th 1130, 1141 [overruled by *Gutierrez, supra,* 58 Cal.4th at pp. 1370-1371].) Defendant was sentenced to LWOP two years after the *Guinn* decision was published.

In 2010, the United States Supreme Court decided that the Eighth Amendment prohibited the imposition of a life-without-parole sentence on a juvenile offender who committed a non-homicide crime and, while the defendant need not be guaranteed eventual release from the life sentence, he must have some realistic opportunity to obtain release before the end of the life term. (*Graham v. Florida* (2010) 560 U.S. 48, 74-75 [130 S.Ct. 2011, 176 L.Ed.2d 825].) Also in December 2010, State Senator Yee introduced Senate Bill 9 to the California Senate, an act to amend Penal Code section

5

1170, adding subdivision (e)(1). (Later renumbered § 1170, subd. (d)(2), with modifications.) This amendment permitted persons who were under the age of 18 at the time of the commission of an offense for which the defendant was sentenced to LWOP to petition for recall and resentencing after serving not less than 10 years, nor more than 15 years of that term as of January 1, 2012. (Stats. 2012, ch. 828, § 1; see http://www.leginfo.ca.gov/pub/11-12/bill/sen/sb_0001-0050/sb_9_bill_20101206_introduced.pdf, as of 4/28/2016.)

On June 25, 2012, the United States Supreme Court revisited the issue of LWOP sentences for juveniles in holding that the Eighth Amendment forbade a sentencing scheme that mandated LWOP for juvenile offenders convicted of first degree murder because it precludes consideration of the juvenile's chronological age and its hallmark features. (*Miller v. Alabama, supra,* 132 S.Ct. at pp. 2455, 2468-2469.) In so holding, however, the Supreme Court cautioned that "Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a life time in prison." (*Id.,* 132 S.Ct. at p. 2469.) In other words, the "categorical bar" on LWOP terms for juveniles applied "only to non-homicide crimes." (*Id.,* 132 S.Ct. at p. 2465.)

On September 30, 2012, the Legislature enacted Senate Bill No. 9, which went into effect on January 1, 2013. In its final version, the provision affecting juveniles sentenced to LWOP was renumbered as section 1170, subdivision (d)(2), and a defendant could bring a petition for recall and resentencing after serving 15 years, rather than 10, as

6

in the original version. Effective January 1, 2014, the Legislature passed Senate Bill No. 260, which added sections 3051, 3046, subdivision (c), and 4801 to the Penal Code. That section requires the Board of Parole Hearings to conduct a youth offender parole hearing during the 15th, 20thy, or 25th year of a juvenile offender's incarceration, depending on the offenders' controlling offense. (§ 3051, subd. (b)(1)-(3).) However, by its terms, section 3051 does not apply to cases in which the offender was sentenced to LWOP. (§ 3051, subd. (h).)

On January 25, 2016, the United States Supreme Court held that *Miller's* holding that mandatory LWOP sentences for juvenile homicide offenders violated the Eighth Amendment and announced a new substantive rule that was retroactive in cases on collateral review. (*Montgomery v. Louisiana* (2016) ___ U.S.___ [136 S.Ct. 718, 734, 736, 193 L.Ed.2d 599].) The Court also held that giving *Miller* retroactive effect does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory LWOP. (*Montgomery,* 136 S.Ct. at p. 736.) Instead, allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity will not be forced to serve a disproportionate sentence. (*Ibid.*)

We now examine defendant's claims of error pertaining to the denial of his petition to recall his LWOP sentence.

2.      *The Decision to Recall a Sentence Pursuant to Section 1170, subdivision (d)(2) Is Discretionary.*

Defendant argues that the trial court abused its discretion in denying his recall petition.  He also asserts that reversal is required because the trial court incorrectly interpreted the statute as applying only to persons convicted of murder who were not the actual killers, and that in denying the petition, the lower court "flouted *Miller* and *Gutierrez*."  While we agree the trial court misconstrued certain language relating to one factor to be considered, any error was harmless.

Section 1170, subdivision (d)(2), permits a defendant serving an LWOP sentence to file a petition seeking recall and resentencing if he was under the age of 18 at the time of the commission of the offense, providing his offense did not involve torture, and providing the victim was not a public safety official.  Section 1170, subdivision (d)(2)(E) requires the court to conduct a hearing to consider whether to recall the sentence.  There are several factors to be considered by the court in determining whether to recall and resentence.  (§ 1170, subd. (d)(2)(F).)

These provisions authorize a court to recall the sentence and to resentence defendant under certain conditions, but the language is permissive, not mandatory.  The court has the discretion to recall the sentence previously ordered and to resentence the defendant in the same manner as if the defendant had not previously been sentenced, providing that any new sentence is no greater than the original sentence.  (§ 1170, subd. (d)(2)(G).)

8

The statute thus confers broad discretion on the trial court in considering relevant factors and determining whether to recall the sentence. This is the same discretion that is exercised pursuant to section 190.5, subdivision (b), which confers discretion upon the trial court to sentence a 16- or 17-year-old juvenile convicted of special circumstance murder to life without parole or to 25 years to life. (See *Gutierrez, supra,* 58 Cal.4th at pp. 1360-1361.) Sentencing decisions are reviewed for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847; *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 976-977.) Under this standard, a trial court's exercise of discretion will not be disturbed unless the trial court exercised it in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)

a. *Section 1170, subdivision (d)(2) Is Not Limited to Aiders/Abettors or Non-Killers.*

Defendant argues the trial court incorrectly held that section 1170, subdivision (d)(2) is limited to those convicted of first degree murder under felony-murder or aider/abettor theories who were not the actual killers. At the time of the hearing on the petition, the People orally argued that SB 9 was not intended for persons like defendant, referring to unspecified legislative history; instead, the People argued it was intended for accomplices. The trial court agreed that the felony murder factor was intended to apply to persons who were aiders/abettors or the nonkiller. We disagree with the lower court's

9

interpretation, but our conclusion does not compel a conclusion that the petition should have been granted.

In interpreting this statutory provision, we follow well settled principles: Our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. (*Gutierrez, supra,* 58 Cal.4th at p. 1369.) We first look to the statutory language, the words themselves, as the most reliable indicator of legislative intent. (*Ibid.;* see also, *People v. Woodhead* (1987) 43 Cal.3d 1002, 1007.) "'When the language is clear and unambiguous, there is no need for construction. [Citations.]' [Citation.]" (*In re Nathaniel C.* (1991) 228 Cal.App.3d 990, 1002 (*Nathaniel C.*).) We give the language its usual and ordinary meaning. (*Gutierrez, supra,* 58 Cal.4th at p. 1369.) Courts should "strive to give meaning to every word of the statute and to avoid constructions that render words, phrases, or clauses superfluous." (*Klein v. United States of America* (2010) 50 Cal.4th 68, 80.) We will "decline to follow the plain meaning of a statute only when to do so would inevitably frustrate the manifest purpose of the legislation as a whole or lead to absurd results." (*Nathaniel C., supra,* 228 Cal.App.3d at p. 1002, citing *People v. Belleci* (1979) 24 Cal.3d 879, 884.)

Instead, "'[w]e examine the statutory language in the context in which it appears, and adopt the construction that best harmonizes the statute internally and with related statutes. [Citations.]'" (*People v. Whitmer* (2014) 230 Cal.App.4th 906, 917, citing *People v. Palmer* (2005) 133 Cal.App.4th 1141, 1149.) We review questions of statutory construction de novo. (*People v. Christman* (2014) 229 Cal.App.4th 810, 816.)

10

Section 1170, subdivision (d)(2)(A)(i), provides that when a defendant was under 18 years of age at the time of the commission of the offense for which he was sentenced to imprisonment for life without the possibility of parole has served at least 15 years of that sentence, the defendant may petition the court for recall and resentencing. This provision does not apply to defendants sentenced to LWOP for an offense where the defendant tortured the victim, or where the victim was a public safety official. (§ 1170, subd. (d)(2)(A)(ii).)

A petition pursuant to section 1170, subdivision (d)(2) must include the defendant's statement that he or she was under 18 years of age at the time of the crime, was sentenced to LWOP, and include a statement describing his or her remorse and work towards rehabilitation, as well as defendant's statement that one of the following is true: (i) The defendant was convicted pursuant to felony murder or aiding and abetting murder provisions of the law, (ii) The defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall, (iii) The defendant committed the offense with at least one adult codefendant, (iv) The defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation. (§ 1170, subd. (d)(2)(B).)

The court must hold a hearing to consider whether to recall the sentence if it finds by a preponderance of the evidence that the statements in the petition are true. (§ 1170, subd. (d)(2)(E).) At the hearing, the court may consider certain factors, including, but not

11

limited to, the factors set out in the defendant's statement pursuant to section 1170, subdivision (d)(2)(B).  (§ 1170, subd. (d)(2)(F).)  One such factor is whether "[t]he defendant was convicted pursuant to felony murder or aiding and abetting murder provisions of law."  (§ 1170, subd. (d)(1)(F)(i).)

In construing statutes, we must rely on the usual, ordinary import of the language used.  (*In re Jesusa V.* (2004) 32 Cal.4th 588, 622.)  The "ordinary and popular" meaning of the word "or" is well-settled as having a disjunctive meaning.  (*Ibid.*)  The plain and ordinary meaning of the word "or" is well established: it indicates an intention to designate separate, disjunctive categories.  (*Smith v. Selma Community Hospital* (2010) 188 Cal.App.4th 1, 30, citing *White v. County of Sacramento* (1982) 31 Cal.3d 676, 680, among other authorities.)  In the case of section 1170, subdivision (d)(2)(B)(i), the Legislature used the word "or" between "felony murder" and "aiding and abetting."  In so doing, it described two separate, disjunctive categories of persons serving LWOP sentences who would be eligible to petition:  one type includes persons whose first degree murder liability was established under the felony murder doctrine; the other type includes persons whose murder liability was established under aider/abettor principles.

By referring to felony murder as a theory disjoined from aider and abettor liability, it appears more likely the Legislature intended to include persons who would have been convicted of a lesser degree of homicide but for the fact it occurred during the commission of a dangerous felony.  Any other interpretation renders the inclusion of the

12

reference to "felony murder" as surplusage. The fact that the legislation does not extend to persons convicted of premeditated or deliberate murder bolsters our interpretation.

At the hearing, the People argued that ". . . SB 9 was not meant for him. When you look through the legislative history, it was meant for accomplices, felony murders, it wasn't meant for the executioner." We reviewed the legislative history and found no evidence of such an intention. Had the Legislature intended to limit relief to persons convicted under a theory of vicarious liability but were not the actual killers, it could have said that relief was limited to juveniles convicted under a theory of vicarious liability.

In none of the legislative materials is there a reference to a requirement that relief be limited to persons who did not actually commit the homicide. (Sen. Bill No. 9 (2011-2012 Reg. Sess.) Instead, section 1170, subdivision (d)(2) constitutes a legislative "act of lenity" designed to permit defendants to secure a "downward modification" of their sentences, in much the same way that section 1170.126 does for Three Strike defendants. (See *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1304.)

There is nothing in the legislative history of section 1170, subdivision (d)(2), or in our review of the cases interpreting the statute, evincing an intent to restrict the right to seek recall and resentencing to persons convicted as accomplices or aiders and abettors. We therefore agree with the defendant's argument that the trial court erroneously stated that relief was limited to persons who did not actually cause the death. However, the trial court's view of legislative intent did not result in a summary denial of the petition, so any

13

error was harmless.  An ineligible defendant would not have been granted a hearing on the petition pursuant to section 1170, subdivision (d)(2)(B)(i).

Further, under section 1170, subdivision (d)(2)(F), the felony-murder-factor was but one of several circumstances to be considered by the trial court at the hearing in deciding whether or not to recall the sentence originally imposed.  In this case, the trial court properly based its decision on two appropriate factors, which are supported by the record, so any error was harmless.  (See *People v. Price* (1991) 1 Cal.4th 324, 492, citing *People v. Avalos* (1984) 37 Cal.3d 216, 233 ["When a trial court gives both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper."]; see also, *People v. Leonard* (2014) 228 Cal.App.4th 465, 503 [applying same rationale to motions per *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497], citing *People v. Cluff* (2001) 87 Cal.App.4th 991, 998.)

b.  *The Trial Court Did Not Abuse Its Discretion*

Defendant presented numerous certificates and documents in support of his petition.  Other than the certificates and the "chronos,"[5] the information provided to the court in support of the petition consisted of documents prepared by defendant himself.  Of these documents, the great majority of them were created after the enactment of

---

[5] A "Chrono" is a California Department of Corrections and Rehabilitation Form 128-B, which is used to document information about inmates and inmate behavior. (15 Cal. Code Reg., § 3000.)

14

Senate Bill 9. There is thus a self-serving quality to much of the information submitted in support of the petition.

The People drew attention to the fact that nearly one-half of the exhibits point to rehabilitative efforts made just in the two years prior to the hearing. The trial court agreed with the points raised by the People in their opposition to the petition, in which the People asserted defendant's statements of remorse and work towards rehabilitation were neither credible nor adequate given the length of time defendant had to work on those issues. The People also noted that defendant's statements of remorse were not believable and that he made excuses for his behavior on the night of the crime. The trial court agreed.

Defendant argues in his reply brief that there is insufficient evidence to support the trial court's findings that he did not demonstrate remorse or rehabilitation, citing the testimony of the defense expert that he believed defendant was sincerely remorseful. The record supports the court's conclusion: the majority of defendant's efforts at rehabilitation, as evidenced by the exhibits submitted in support of his petition, postdate the enactment of Senate Bill 9. A trier of fact could reasonably conclude that defendant's efforts were not reflective of genuine remorse or rehabilitation. Moreover, the trial court was free to reject the opinion of the expert because it was based on the late actions and expressions of the defendant. (See *People v. McWhorter* (2009) 47 Cal.4th 318, 362-363 [trial court may reject expert opinion where the basis of the opinion is unreliable hearsay or other unreliable sources of information].)

The court's misunderstanding that section 1170, subdivision (d)(2) was intended for non-killers was but one factor out of many that were considered by the trial court. The remaining factors were properly considered and there was substantial evidence to support the trial court's ruling on the petition. The finding of one proper factor is sufficient to justify the court's decision. (See, *People v. Castaneda* (1999) 75 Cal.App.4th 611, 615 [re factors in aggravation to justify upper term], citing *People v. Cruz* (1995) 38 Cal.App.4th 427, 433-434.) There was no abuse of discretion.

3.    *The Trial Court Did Not "Flout Miller and Gutierrez."*

Defendant argues that the trial court's ruling "flout[ed] *Miller* and *Gutierrez.*" Specifically, he asserts that the recent decisions barring mandatory LWOP terms for juveniles require that the defendant be permitted "to present all types of mitigation and that the sentencing authority is required to meaningfully consider" it. Moreover, he argues that the trial court refused to weigh all of the applicable factors, and that such refusal "transcends a statutory violation and has the potential to violate the 'evolving standards of decency' and the requirement of 'individualized sentencing' required by the Eighth Amendment." Because of the limited focus of section 1170, subdivision (d)(2), we disagree.

The recent holding of *Miller v. Alabama, supra,* 132 S.Ct. at page 2465 does not hold that an LWOP sentence may never be imposed upon a person who was under the age of 18 at the time of the offense. It merely requires a trial court, in exercising its discretion, to consider the "distinctive attributes of youth" and how those attributes

16

"diminish the penological justifications for imposing the harshest sentences on juvenile offenders" before imposing LWOP on a juvenile.  (*Ibid.*)

In *Gutierrez, supra,* 58 Cal.4th at page 1379, the California Supreme Court considered the constitutionality of section 190.5 in light of the pre-*Miller* line of cases interpreting the statute as creating a presumption favoring LWOP.  The court held that section 190.5, applicable to persons who were 16 or 17 at the time of their offenses, did not create a presumption favoring LWOP, disapproving of *People v. Guinn* (1994) 28 Cal.App.4th 1130 and its progeny.  (*Gutierrez, supra,* 58 Cal.4th at p. 1387.)  Instead, it adopted an interpretation of section 190.5 that requires a sentencing court to take into account mitigating factors relating to "the distinctive attributes of youth," in deciding whether to impose LWOP or a term of 25 years to life.  (*Gutierrez, supra,* 58 Cal.4th at p. 1390.)  In reaching this conclusion, the California Supreme Court reasoned that *Miller* does not compel a resentencing to a lesser term where the court, in its discretion, concludes that LWOP is appropriate.  (*Gutierrez, supra,* 58 Cal.4th at pp. 1379, 1380.)

Neither *Miller* nor *Graham* held that LWOP sentences could never be lawfully imposed on a person who was under the age of 18 at the time of the offense.  Those cases only held that mandatory life without possibility of parole for a juvenile was improper and that imposition of the harshest punishment on a juvenile requires individualized sentencing that takes into account an offender's "youth [and all that accompanies it]." (*Gutierrez, supra,* 58 Cal.4th at p. 1377, quoting *Miller, supra,* 132 S.Ct. at p. 2468.)

Nor does section 1170, subdivision (d)(2) mandate resentencing of all persons who were under the age of 18 at the time of their offenses who were sentenced to LWOP. If it were intended to be so, the Legislature would have drafted a statute mandating recall and resentencing for all persons sentenced to LWOP for crimes committed before they were 18. It would not have set out circumstances to be weighed by the court in exercising discretion to either recall the sentence, or not to recall it.

Finally, as *Gutierrez* makes clear, section 1170, subdivision (d)(2) is not a substitute for the initial exercise of discretion pursuant to section 190.5 at the initial sentencing, and does not eliminate the constitutional doubts arising from a presumption in favor of LWOP under the pre-*Miller* line of cases.[6] (*Gutierrez, supra,* 58 Cal.4th at p. 1385.) The Court pointed out that section 1170, subdivision (d)(2)(G) requires a court that has recalled a sentence to "sentence the defendant in the same manner as if the defendant had not previously been sentenced." This gives rise to the risk that, even after granting a petition to recall a sentence, the court might apply the same presumption on resentencing. (*Id*. at p. 1384.) The Court also observed that notwithstanding the potential

---

[6] This precise question is currently pending review in *In re Willover* (2015), formerly at 235 Cal.App.4th 1328, review granted June 24, 2015, S226523. We note that at least one court has expressed the view that section 1170, subdivision (d)(2) remedied any defect in the imposition of an LWOP sentence imposed before *Miller*, and that the statutory procedure under section 1170, subdivision (d)(2) constitutes an adequate remedy at law foreclosing relief by way of habeas corpus. However, that case is also pending review by the Supreme Court. (*In re Kirchner* (2016) 244 Cal.App.4th 1398, review granted May 18, 2016, S233508.) For the reasons explained in *Gutierrez, supra,* we disagree with that conclusion.

mechanism for resentencing, an LWOP sentence imposed pre-*Miller* remains fully effective.  (*Gutierrez, supra,* 58 Cal.4th at p. 1360.)

The trial court did not "flout *Miller* and *Gutierrez*" because the vehicle defendant chose to implement does not compel a review of the constitutionality of an LWOP sentence imposed upon a defendant who was under the age of 18 at the time of his crime. Defendant chose to file a petition to recall and resentence him pursuant to section 1170, subdivision (d)(2), a discretionary application addressed to the court's consideration of circumstances showing the defendant has rehabilitated himself or demonstrated remorse. It is not a vehicle for reconsidering the constitutionality of a sentence in light of the "distinctive attributes of youth," as required by *Miller* and its progeny, in light of an improper presumption favoring imposition of LWOP.

Defendant could have filed a petition for writ of habeas corpus, seeking retroactive application of *Miller* on collateral review.  (See, *Montgomery v. Louisiana* (2016) ___U.S.___ [136 S.Ct. 718, 734, 193 L.Ed.2d 599]; see also, *In re Rainey* (2014) 224 Cal.App.4th 280, 287-290 [decided before *Montgomery*, but reaching the same conclusion].)  We do not foreclose that option here if defendant has not already availed himself of that remedy, notwithstanding our conclusion that the trial court did not abuse its discretion:  defendant's sentence was imposed at a time when *Guinn* was the prevailing authority and he would be entitled to a new sentencing hearing at which the

*Miller* criteria were properly considered, if that was not done.[7]  We simply hold that based on the material presented to the trial court  in support of a recall petition filed pursuant to section 1170, subdivision (d)(2), the trial court did not abuse its discretion.

### DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PUBLICATION

RAMIREZ
P. J.


We concur:

HOLLENHORST
J.

SLOUGH
J.

---

[7]  However, the record does not include the original sentencing proceedings, so we cannot determine if the court found defendant to be someone for whom LWOP would be an appropriate sentence in the first instance.  (See *Gutierrez, supra,* 58 Cal.4th at p. 1380.)

20