Filed 12/16/20  P. v. Harvey CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROSHAJA LAMONT HARVEY,<br><br>    Defendant and Appellant. | D077749<br><br><br>(Super. Ct. No. SCD240649) |

APPEAL from an order of the Superior Court of San Diego County, Eugenia A. Eyherabide, Judge.  Affirmed.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

In 2013, Roshaja Lamont Harvey entered a negotiated guilty plea to robbery (Pen. Code, § 211).[1] He further admitted to personally using a firearm during the commission of the robbery (§ 12022.5) and that he had been convicted of a prior serious felony and strike offense. Harvey and the district attorney stipulated to a 12-year prison sentence, and Harvey was accordingly sentenced.

In January 2020, the California Department of Corrections and Rehabilitation (CDCR) recommended in a letter to the trial court that the court recall Harvey's sentence and resentence him. The recommendation was made in light of a change in the law (§ 667, subd. (a)(1)), since the time of Harvey's conviction. The new law allows trial courts discretion in whether to impose or strike a consecutive five-year enhancement for a prior serious felony.

In an ex parte proceeding, the trial court declined to recall Harvey's sentence for reasons stated in a written order. Harvey appeals the order, claiming that the CDCR's recall recommendation made pursuant to section 1170, subdivision (d)(1), triggered a statutory and/or constitutional right for him to be heard, and a concomitant duty of the trial court to hold a noticed hearing. Harvey further claims he was entitled to be represented by appointed counsel at such a hearing.

For reasons we explain, we reject Harvey's claims and affirm the court's order.

---

[1] Further unspecified statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

*Prior Serious Felony/Strike Offense*

We take the facts of Harvey's prior and current offenses from the probation department's sentencing report. In 1996, Harvey and three companions, wearing hooded sweatshirts, executed a " 'take-over' " style bank robbery during business hours, brandishing weapons, and forcing employees and patrons to get on the floor. One patron was knocked over when he did not comply quickly enough. Harvey and his companions yelled threats, fired off at least one shot, and pointed a gun to the head of one bank teller. They grabbed money from several teller stations, totaling over $30,000, and fled in a get-away car, but were captured by law enforcement. Harvey was convicted of bank robbery and sentenced to federal prison.

*Instant Offense*

In late March 2012, Harvey robbed an automobile repair shop owner (the victim) at gun point, during business hours. The victim was working at his desk in his office. Harvey entered the repair shop with a gun, pointed the gun at the victim's head, and threatened to shoot him if he did not turn over money. The victim gave Harvey the money from his pockets, but Harvey demanded more. When the victim said he did not have any more money, Harvey reached into the victim's pockets and took about $800 from the victim's wallet. Harvey also took the victim's cell phone. Harvey pushed the victim's head down and said, "Stay down and be quiet or I'll shoot you." Harvey searched the desk drawers for more money but found none. He ordered the victim to stay immobile and silent on the floor and left the repair shop.

The victim-owner ran out of his office, alerting two of his employees about the robbery. The owner and one employee trailed Harvey on foot,

repeatedly shouting "robbery" and trying to get help. Harvey turned around and yelled at them, "Stop following me, I'll shoot you." The owner and employee continued to follow Harvey as Harvey approached a silver vehicle. Harvey turned back toward the victim, fired one shot, and fled in the silver vehicle. A different employee picked the victim up in a car, and they briefly pursued the silver vehicle, managing to notate the license plate number.

Based on a description of the suspect and the license plate number provided by the victim, detectives identified Harvey as a suspect. The victim identified Harvey as the robber in a photographic line-up. Harvey was eventually located and taken into custody. He denied the crime and denied owning the silver vehicle.

*Trial Court Proceedings*

The district attorney charged Harvey with robbery (§ 211; count 1). Further, the operative information specially alleged that in the commission of the robbery, Harvey personally used a firearm (§ 12022.53, subd. (b)) and personally and intentionally discharged the firearm (§ 12022.53, subd. (c)); and he was previously convicted of bank robbery, which was a serious felony (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)) and strike offense (§§ 667, subds. (b)-(i), 668, 1170.12). The personal-discharge firearm enhancement under section 12022.53, subdivision (c) carried a mandatory consecutive term of imprisonment for 20 years.

The first trial against Harvey ended in a deadlocked jury and the court's declaring a mistrial.

Thereafter, Harvey and the district attorney reached a plea agreement. Under the terms of their agreement, Harvey would be sentenced to 12 years in prison, in exchange for which he pleaded guilty to count 1, admitted the prior serious felony/strike offense (bank robbery), and admitted a lesser

4

included firearm enhancement (§ 12022.5).[2] Harvey further admitted the factual basis for his plea: "I unlawfully [and] by means of force [and] fear took personal property from the person of [victim, and] I personally used a firearm in the commission of this offense." The court found that Harvey knowingly, intelligently, and voluntarily pleaded guilty and accepted the plea.

The probation department prepared a sentencing report for the court's consideration, recommending the stipulated sentence of 12 years. The sentencing report noted Harvey's significant criminal history beginning in 1989 as an adult, including drug crimes, theft crimes, and other crimes that displayed a willful disregard for public safety, such as evading officers in a high pursuit chase. The sentencing report also summarized the factual bases for Harvey's prior serious felony/strike offense and the instant offense.

In 2013, pursuant to the parties' stipulation, the trial court sentenced Harvey to a total prison term of 12 years, or (1) four years for count 1 (low term of two years, doubled by the prior strike); (2) a consecutive five-year term for the prior serious felony[3]; and (3) a consecutive three-year term for the firearm enhancement.

---

[2] Under the section 12022.5 lesser included enhancement, the trial court could impose a consecutive term of imprisonment for as low as three years, whereas the personal-use and personal-discharge firearm enhancements under section 12022.53, subdivisions (b) and (c), mandated a consecutive term of imprisonment for 10 or 20 years, respectively.

[3] At the time, trial courts "lacked the power 'to strike any prior conviction of a serious felony for purposes of enhancement of a sentence under Section 667.' " (*People v. Shaw* (2020) 56 Cal.App.5th 582, 586 (*Shaw*).)

5

On January 1, 2019, Senate Bill No. 1393 took effect, which gave "courts power to strike the five-year prior serious felony enhancement 'in the furtherance of justice.' " (*Shaw*, *supra*, 56 Cal.App.5th at p. 586.)

On October 10, 2019, Harvey, in propria persona, filed a "motion for modification of sentence" based on the new law allowing trial courts to strike prior serious felony enhancements and requesting the trial court do so in his case. Harvey attested to his participation in self-help and peer-to-peer groups, volunteer work at the prison, assisting others, and acquiring critical thinking skills and rehabilitative tools. He attached exhibits to the motion, including a letter of support from a correctional officer and records showing his participation in therapeutic, self-improvement, and rehabilitative programs from 2014 through 2019.

In an ex parte minute order dated October 21, 2019, the trial court wrote that it had received Harvey's motion for modification and was declining to resentence him under section 1170, subdivision (d).

In January 2020, the Secretary of the CDCR (Secretary) sent a letter to the trial court with copies of the letter to the offices of the district attorney and public defender. The stated purpose of the Secretary's letter was to "provide the court with authority to resentence . . . Harvey pursuant to Penal Code section 1170, subdivision (d)." The Secretary recommended that "Harvey's sentence be recalled and that he be resentenced" in accordance with the statutory provision (recommendation letter).

The recommendation letter enclosed numerous documents, including Harvey's attendance in rehabilitative programs, work assignment history, and a report showing no rules violations.

In an ex parte minute order dated June 15, 2020, the trial court indicated that it had received the recommendation letter and was declining to

6

recall Harvey's sentence. The court wrote: "In assessing the Secretary's recommendation, the [c]ourt reviewed and considered the recommendation; the accompanying enclosures, including [d]efendant's program participation and behavior reports; [d]efendant's case file and criminal history; the stipulated sentence report; and additional postconviction factors. The [c]ourt notes [d]efendant has successfully completed a number of multi-week programs on a variety of topics. He also has not received any rules violation reports. Nonetheless, after carefully considering the totality of factors, the [c]ourt does not find resentencing is warranted for [d]efendant under section 1170(d)(l)." The order was served on the CDCR, the offices of the district attorney and public defender, and Harvey.

This appeal followed.

## DISCUSSION

Harvey claims the trial court was required to hold a hearing on the Secretary's recommendation letter, at which he, and counsel appointed on his behalf, could appear. Harvey argues that the Secretary's recommendation letter triggered a right to a hearing.

The People respond that section 1170, subdivision (d)(1) (section 1170(d)(1)) does not require the trial court to hold a hearing prior to acting on a recommendation from the Secretary to recall an inmate's sentence. The People posit that the recommendation letter invites the court to exercise its equitable jurisdiction to recall a sentence, which is independent from any resentencing.

Reviewing this question of statutory construction de novo, we find merit in the People's position. (*People v. McCallum* (2020) 55 Cal.App.5th 202, 215-216 (*McCallum*) [defendant has no statutory or due process right to a hearing on decision to recall sentence].)

7

*The Recommendation Letter Did Not Trigger a Hearing Right*

In interpreting a statute, " 'our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning.' " (*People v. Acosta* (2002) 29 Cal.4th 105, 112.) We do not consider provisions in isolation, but rather, look to the entire substance of the statute for context to determine the scope and purpose of a given provision. (*Ibid.*) " 'We must harmonize "the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole." ' " (*Ibid.*)

Section 1170(d)(1)[4] states in relevant part, "[T]he court may, within 120 days of the date of commitment on its own motion, or at any time upon the recommendation of the secretary . . . in the case of state prison inmates, . . . recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he or she had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence." The statutory provision goes on to provide a nonexhaustive list of postconviction factors the court may consider in resentencing.[5] (§ 1170, subd. (d)(1).)

---

[4]    Unless otherwise specified, references to subdivision (d)(1) of section 1170 are to the version in effect at the time of the trial court's decision in June 2020, which version is not materially different from the current version in effect. (Stats. 2018, ch. 1001, § 1, eff. Jan. 1, 2019.)

[5]    The postconviction factors include, but are not limited to, "the inmate's disciplinary record and record of rehabilitation while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the inmate's risk for future violence, and evidence that reflects that circumstances have changed since the inmate's original

Section 1170(d)(1) "is an exception to the common law rule that the court loses resentencing jurisdiction once execution of sentence has begun." (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 455 (*Dix*).) By its terms, the statutory provision operates in two steps. (*Ibid.*) First, "it empowers a trial court to recall and vacate a prison sentence after commitment, . . . upon the court's own motion, or upon recommendation . . . ." (*Id.* at p. 456.) Second, "[o]nce the sentence and commitment have validly been recalled, section [1170(d)(1)] authorizes the court to 'resentence . . . in the same manner as if [the defendant] had not previously been sentenced . . . .' " (*Dix*, at p. 456, italics removed.)

Section 1170(d)(1) does not by its terms provide that the trial court must hold a hearing on receiving a recommendation to recall an inmate's sentence or in considering whether to recall a sentence. Moreover, any action to be taken upon receiving a recommendation is clearly permissive—the statute uses the verb "may," not "shall." (§ 1170, subd. (d)(1)*; People v. Humphrey* (2020) 44 Cal.App.5th 371, 377 (*Humphrey*); *People v. Gibson* (2016) 2 Cal.App.5th 315, 324 (*Gibson*); *People v. Delson* (1984) 161 Cal.App.3d 56, 62 (*Delson*) [no abuse of discretion in refusing to set a hearing on the department of corrections' recommendation for alternative sentencing].)

*McCallum* dealt with the same issue of "whether the trial court must hold a hearing prior to ruling on the Secretary's recommendation for recall and resentencing." (*McCallum, supra*, 55 Cal.App.5th at p. 212.) Observing that the statutory provision itself is silent on the issue, the court reviewed other subdivisions of section 1170 in which the Legislature has required a

---

sentencing so that the inmate's continued incarceration is no longer in the interest of justice." (§ 1170, subd. (d)(1).)

hearing.  (*McCallum*, at p. 212.)  For example, in the case of terminally ill or permanently incapacitated prisoners, subdivision (e)(3) of section 1170 explicitly requires the court to " 'hold a hearing to consider whether the prisoner's sentence should be recalled.' "  (*Ibid.*; see also *Gibson*, *supra*, 2 Cal.App.5th at p. 324 [subdivision (d)(2)(E) of section 1170 includes the language, "hold a hearing"].)  "A review of section 1170 shows the Legislature was well aware of what language to use to require the trial court to hold a hearing before acting on a recommendation or petition to recall a sentence." (*McCallum*, at p. 212.)  The Legislature did not include a "hearing" requirement in section 1170(d)(1).  (*McCallum*, at p. 213.)  We agree with *McCallum's* reasoning.

Harvey's reliance on *People v. Rocha* (2019) 32 Cal.App.5th 352, 355 (*Rocha*), to support his position that the Secretary's recommendation letter triggered a hearing right, is unavailing.  In *Rocha*, the defendant's murder conviction was not yet final when Senate Bill No. 620 was passed.  Senate Bill No. 620 gave trial courts discretion to strike or dismiss firearm enhancements imposed under section 12022.53, subdivision (h).  The court of appeal affirmed the defendant's conviction and remanded his case to give the trial court an opportunity to exercise its discretion on the firearm enhancements.  On remand, without holding a hearing, the trial court issued a written statement declining to strike defendant's firearm enhancement. (*Rocha*, at p. 355.)  The appellate court concluded that the trial court was required to hold a hearing at which defendant was entitled to be present, with counsel.  (*Rocha*, at pp. 359-360.)

*Rocha* merely "comports with principles generally applicable to resentencing law.  For example, it is well settled that when a case is remanded for resentencing after an appeal, the defendant is entitled to 'all

10

the normal rights and procedures available at his original sentencing' [citations], including consideration of any pertinent circumstances which have arisen since the prior sentence was imposed [citation]." (*Dix, supra,* 53 Cal.3d at p. 460; *Rocha, supra,* 32 Cal.App.5th at p. 359.)

Unlike in *Rocha*, Harvey's conviction is final. He is not entitled to the benefit of Senate Bill No. 1393 because his sentence was final in 2013, well before enactment of the amendment. Penalty assessments are applied retroactively only to judgments not final. (*In re Estrada* (1965) 63 Cal.2d 740, 745-748; *People v. Brown* (2012) 54 Cal.4th 314, 323 [amended statutes apply to defendants whose judgments are not yet final on the statute's operative date].) Similarly, Harvey's case was not remanded to the trial court for resentencing. Because the court declined to recall his sentence as an initial matter, his case did not reach the resentencing stage. (*Dix, supra,* 53 Cal.3d at p. 456.)

Harvey also relies on *Gibson, supra,* 2 Cal.App.5th at page 326, for the proposition that a different subdivision of section 1170—subdivision (d)(2)(E)—has been interpreted as requiring a hearing on the issue of *whether* to recall a sentence despite a lack of an express reference to a "hearing" in the statute. Harvey is wrong on this point. *Gibson* is a 2016 case. The version of section 1170, subdivision (d)(2)(E) in effect at that time stated, "If the court finds by a preponderance of the evidence that the statements in the petition are true, *the court shall hold a hearing to consider whether to recall the sentence* and commitment previously ordered and to resentence the defendant in the same manner as if the defendant had not previously been sentenced . . . ." (§ 1170, former subd. (d)(2)(E), italics added.) *Gibson* correctly interpreted this language—"shall hold a hearing to consider whether to recall the sentence"—as requiring a hearing on whether to recall.

11

(*Gibson*, at p. 326.) After *Gibson*, the wording of section 1170, subdivision (d)(2)(E) was modified. (Stats. 2016, ch. 887, § 5.3, eff. Jan. 1, 2017.)

Harvey argues that public policy and principles of fairness support a hearing requirement on the Secretary's recommendation. He suggests that trial courts may otherwise decline to recall sentences on improper racial grounds, or at minimum, indigent Black prisoners like himself are left wondering as to the reasons why a recommendation is approved or rejected. These arguments are unpersuasive on the record before us, where there is no hint that the trial court declined to recall Harvey's sentence for unlawful, illegitimate, or even unknown reasons.

In its order, the trial court set forth the items and matters it considered, including Harvey's case file, criminal history, the stipulated sentence report, and "postconviction factors" (§ 1170, subd. (d)(l)), and declined to recall his sentence based on "the totality of factors." Harvey's disciplinary record and rehabilitative efforts in prison were cited with approval. Nonetheless, the court implicitly found that the initial punishment was still justified. We note that Harvey has a significant criminal record dating back to 1989 as an adult. His criminal conduct has repeatedly displayed a willful disregard for public safety. The instant and prior offenses were violent and susceptible to causing great injury to community members. Based on our review of the record, the trial court declined to recall Harvey's sentence for lawful reasons.[6]

In addition, we are mindful that Harvey received " 'all the normal rights and procedures available at his original sentencing' " (*Dix*, *supra*, 53

---

[6]      In deciding whether to recall, the sentencing court may consider "any reason which could influence sentencing generally, even if the reason arose after the original commitment." (*Dix*, *supra*, 53 Cal.3d at p. 463.)

Cal.3d at p. 460); indeed, he stipulated to a 12-year prison sentence, which is considerably less than what he faced had he been convicted by a jury.[7] There is no indication in the record that any sentencing-related decision in Harvey's case was made on improper grounds. We decline to speculate on the broader public policy implications of section 1170(d)(1).

Lastly, Harvey argues that if this court accepts the reasoning of *McCallum*, then we must remand the case and allow him to submit "responsive paperwork" to the trial court. In *McCallum*, after the Secretary recommended recall and resentencing to the trial court, McCallum's attorney requested a case management conference to discuss and potentially brief and argue the merits of the recommendation. (*McCallum*, *supra*, 55 Cal.App.5th at p. 209.) Without holding the requested case management conference, the trial court issued a written order declining to recall McCallum's sentence. (*Ibid.*) Among the reasons given for its decision, the court noted that the defendant had "tenuous" family and community support. (*Ibid.*) However, the defendant had not been allowed to provide any input on this matter. (*Id.* at pp. 218-219.)

The Second District Court of Appeal found that the trial court abused its discretion in ignoring McCallum's request for a conference and not allowing him to submit specified information relevant to the Secretary's recommendation. (*McCallum*, *supra*, 55 Cal.App.5th at pp. 218-219.) The defendant did in fact appear to have support for reentry in the community;

---

[7] Assuming a jury had returned guilty verdicts and true findings on count 1, the alleged personal-use firearm enhancement (*not* the more severe personal-discharge firearm enhancement), and the alleged prior serious felony conviction/strike, Harvey faced a minimum prison term of 19 years. He faced a minimum prison term of 29 years if the jury had returned a true finding on the personal-discharge firearm enhancement.

13

unknown to the trial court, "McCallum had been accepted into an inpatient substance abuse and mental health counseling program with vocational training upon his release." (*Id*. at p. 218.)

We are not convinced that the Second District's finding of an abuse of discretion in *McCallum* established a rule requiring trial courts to consider supplemental paperwork from inmates in all other cases. (See *People v. Frazier* (2020) 55 Cal.App.5th 858, 868-869 (*Frazier*) [approving *McCallum* yet finding no abuse of discretion in trial court's summarily declining to recall sentence].) The Legislature has not set forth a procedure in section 1170(d)(1) for an inmate to be notified of the Secretary's recommendation, and without notice, it is unclear how the inmate would know to submit materials to the trial court. Only the offices of the district attorney and public defender were copied on the recommendation letter. In addition, unrepresented inmates may not know how to provide an appropriate response; they might do more harm than good to their cause. The *McCallum* finding of an abuse of discretion appears specific to the facts of that case.

Furthermore, the concerns in *McCallum*, which allowed defendant's submission of certain information, are lacking here. Only a few months before the Secretary's recommendation letter, Harvey submitted a host of materials relating to his "rehabilitation and reentry plans" (*McCallum*, *supra*, 55 Cal.App.5th at p. 217) in support of his motion for modification of sentence. He described work he had done, skills he had acquired to live productively, and rehabilitation programs he had completed. On appeal, Harvey does not identify any specific additional information, like that identified in *McCallum*, which would materially impact the trial court's decision.

14

In summary, the Secretary's recommendation letter did not trigger a statutory hearing right on whether to recall Harvey's sentence, and the trial court was not required to allow the submission of additional information. Harvey has failed to establish reversible error. (*Delson, supra*, 161 Cal.App.3d at p. 61.)

*The Lack of Hearing Did Not Violate Due Process*

Harvey next claims that "due process principles" required the trial court to hold a noticed hearing, at which he was personally present, on the Secretary's recommendation letter under section 1170(d)(1). The parties do not dispute that an inmate is entitled to be present at a resentencing hearing, but the question before us is whether an inmate is entitled to be heard by the trial court on the Secretary's recommendation letter, prior to any resentencing.

"[A] defendant does not have the right to be present at every hearing held in the course of the trial; the touchstone is whether the proceeding in question bears a reasonable and substantial relationship to his or her full opportunity to defend against the charges." (*Rocha, supra*, 32 Cal.App.5th at p. 357; *People v. Wallace* (2008) 44 Cal.4th 1032, 1052; *People v. Rodriguez* (1998) 17 Cal.4th 253, 260.)

Harvey has not cited, nor have we located, any case law holding that a section 1170(d)(1) recommendation for recall and resentencing triggers a due process right to a hearing, requiring an inmate's personal presence. The Second District Court of Appeal concluded that inmates have no due process right to be heard on a recommendation for recall, and we agree. (*McCallum, supra*, 55 Cal.App.5th at pp. 215-216; *Frazier, supra*, 55 Cal.App.5th at p. 866.) "It is only after the petitioner's eligibility has been established and the statutory mandate for resentencing triggered . . . that due process

15

protections, including the right to a hearing, attach to the determination whether the defendant will be awarded the relief sought." (*Id.* at p. 867.)

We reiterate that, under section 1170(d)(1), the court may recall a sentence *on its own initiative* within 120 days of the date of commitment. (*Dix, supra,* 53 Cal.3d at p. 459.) Certainly, no hearing is required when the sentencing court recalls (or declines to recall) a sentence on its own cognizance within this period. (*Id.* at p. 463.) Beyond the 120 day-period, "the Secretary's recommendation letter is but an invitation to the court to exercise its equitable jurisdiction." (*Frazier, supra,* 55 Cal.App.5th at p. 866.) Under these circumstances, we are not persuaded that state or federal constitutional principles command an inmate's personal appearance before the trial court.

In support of his due process argument, Harvey relies on *People v. Kaulick* (2013) 215 Cal.App.4th 1279, 1297 (*Kaulick*). In that case, the trial court granted the defendant's petition for resentencing based on Proposition 36, which amended the Three Strikes law, without giving notice or an opportunity to be heard to the prosecution. The Court of Appeal found that due process required a noticed hearing on the issue of whether resentencing would pose an unreasonable risk of danger to public safety as well as any subsequent resentencing. (*Kaulick,* at pp. 1297-1299.) The relevant statutory language at issue in *Kaulick,* that of section 1170.126, subdivision (f), states in pertinent part: "Upon receiving a petition for recall of sentence under this section, the court shall determine whether the petitioner satisfies the criteria in subdivision (e). If the petitioner satisfies the criteria in subdivision (e), the petitioner *shall be resentenced* . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an

16

unreasonable risk of danger to public safety." (§ 1170.126, subd. (f), italics added; *Kaulick*, at p. 1299.)

Thus, the actions to be taken by a trial court after it receives a satisfactory petition under section 1170.126, subdivision (f), are mandatory. The defendant is statutorily entitled to resentencing *unless* the court finds an unreasonable risk of danger to the public. The parties in *Kaulick* agreed that both determinations under section 1170.126, subdivision (f) (resentencing and danger-posed-by-resentencing) required a hearing. (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1299.) Notably, however, the defendant in *Kaulick* conceded that a hearing was not required on the "initial" eligibility determination. (*Ibid.*)

*Kaulick* is distinguishable. Under section 1170(d)(1), any action to be taken by the trial court upon receiving a recommendation for recall and resentencing is permissive. The Secretary's recommendation letter provides defendant no statutory entitlement to relief. "Section 1170(d) allows the sentencing court to recall and resentence at any time upon recommendation of the Board or the Director, but . . . it does not require the court to 'consider' any such recommendation." (*Dix*, *supra*, 53 Cal.3d at p. 459, fn. 13.) Further, the inclusion of postconviction factors in section 1170(d)(1) "provid[es] guidance for the trial court's resentencing decision, not its initial decision whether to recall the sentence." (*McCallum*, *supra*, 55 Cal.App.5th at p. 214.) This case cannot be properly analogized to *Kaulick*.

Based on the foregoing, we conclude Harvey had no due process right to a hearing on the Secretary's recommendation letter. (*McCallum*, *supra*, 55 Cal.App.5th at pp. 215-216; *Frazier*, *supra*, 55 Cal.App.5th at p. 866.)

17

*Harvey Had No Right to Counsel*

Harvey's last claim is conditional. He asserts that because he had a right to be heard by the trial court on the Secretary's recommendation letter, he also had a corresponding right to counsel.

As we have discussed, Harvey was not entitled to a hearing on the Secretary's recommendation letter. Accordingly, he also had no right to counsel. (*Frazier*, *supra*, 55 Cal.App.5th at p. 869 ["the filing of the Secretary's recommendation letter inviting the court to exercise its jurisdiction pursuant to section 1170, subdivision (d)(1), to recall a sentence, without more, does not trigger a due process right to counsel."]; *Murray v. Giarratano* (1989) 492 U.S. 1, 7 [due process and equal protection principles do not require a state to appoint counsel for indigent prisoners seeking state postconviction relief].)

## DISPOSITION

The order declining to recall Harvey's sentence is affirmed.

HALLER, Acting P. J.

WE CONCUR:

AARON, J.

GUERRERO, J.

18