Filed 10/27/21  P. v. Mendez CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ARTHUR GILBERT MENDEZ, JR.,<br><br>Defendant and Appellant. | B304188<br><br>(Los Angeles County<br>Super. Ct. No. KA119553) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Bruce F. Marrs, Judge.  Affirmed as modified.

Maxine Weksler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

Appellant Arthur Gilbert Mendez, Jr. was convicted by a jury of 24 counts of sexual abuse perpetrated upon four of his minor daughters and a minor step-daughter. He was sentenced to a term of 390 years to life. We reject his factual challenge to four of the 24 counts but agree with the parties that the sentence on the same four counts must be reduced from 25 years to life to 15 years to life. In all other respects, we affirm the judgment.

**THE CONVICTIONS**

The minor victims were K. and Ia., twins born in February 2003, C., born September 2005, A., born May 2007, and step-daughter I., born April 1993.

The jury found appellant guilty as charged. The verdicts were, as to each of the several victims: victim K., one count of sexual penetration by use of force (count 1), four counts of forcible rape (counts 2, 3, 7, 8), one count of forcible oral copulation (count 4), three counts of child abuse (counts 5, 6, 10), and one count of sodomy by use of force (count 9); victim A., one count of child abuse (count 11); victim C., two counts of child abuse (counts 12, 13)[1]; victim Ia., three counts of child abuse (counts 14-16), one count of forcible rape (count 17), one count of sexual penetration by use of force (count 18), one count of forcible oral copulation (count 19), and one count of sodomy by use of force (count 20); and victim I., four counts of forcible lewd act upon a child[2] (counts 21–24).

---

[1] On the People's motion, counts 12 and 13 were dismissed as barred by the statute of limitations.

[2] Penal Code section 288, subdivision (b)(1).
All further statutory references are to the Penal Code.

The only convictions factually challenged by this appeal are the four counts (21–24) as to victim I.

The jury also found true the allegations that K. was a minor 14 years of age or older, that Ia. was a child under 14 years of age, that appellant used a deadly weapon (a knife) (§ 12022, subd. (b)(1)) in counts 6 and 16, and that appellant committed an offense against more than one victim (§ 667.61).

In addition to sentencing appellant to a term of 390 years to life, the court imposed a variety of fines and fees totaling $13,590. We reject appellant's various challenges to the fines and fees imposed.

The appeal is from the judgment.

## THE FACTS

Appellant does not challenge the jury's verdict on counts 1 through 20. Given the sensitive nature of the evidence on these counts, the youth of the victims, and the general presumption of the correctness of the judgment (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564), we need not summarize the evidence that supports the conviction of these 20 counts. We note, however, that sexual abuse inflicted by appellant on these minor children was endemic to their relationship.

Appellant contends there is insufficient evidence that he used force or duress in committing the lewd acts upon I. and that he therefore did not violate subdivision (b)(1) of section 288. Appellant's contention requires a brief note on the structure of section 288.

Subdivision (a) of section 288 punishes the commission of a lewd act upon a child under the age of 14 years.[3] Subdivision (b)

---

[3] "Except as provided in subdivision (i), a person who willfully and lewdly commits any lewd or lascivious act, including

of section 288, based on subdivision (a), provides for a more serious felony than that set forth in subdivision (a): "A person who commits an act described in subdivision (a) by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, is guilty of a felony and shall be punished by imprisonment in the state prison for 5, 8, or 10 years." (§ 288, subd. (b)(1).) Appellant was found guilty of four violations of section 288, subdivision (b)(1) with I. as the victim of these offenses.

We limit our summary of the facts to the evidence that supports appellant's conviction of these four offenses.

When I. was eight or nine years old, appellant moved in with I.'s mother, I., and her two younger brothers in an apartment in El Monte. Appellant was in a relationship with I.'s mother. Although he was not I.'s biological father, I. viewed appellant as a father figure. I. described the atmosphere in this home as "very toxic" with appellant and I.'s mother fighting a lot. Appellant would physically abuse not only I.'s mother but also her siblings. I. was the only one who was not getting spanked or yelled at. I. witnessed appellant "sock" her mother in the face and "beat her down."

I. witnessed appellant hit her brothers with belts and with his hands. One time, when I.'s brothers were jumping on their beds, appellant grabbed a piece of wood that held up the bed and

---

any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years." (§ 288, subd. (a).)

4

hit them with it.  Appellant hit the brothers "[o]n their backs.  Anywhere."  The physical abuse of I.'s mother and brothers happened about once a week.

A few months after he moved in, appellant began to touch I. inappropriately.  One night, when I. was eight or nine years old, she and appellant were lying on the bed in appellant's bedroom, and appellant grabbed I.'s breasts.  I. did not do anything. "I was scared to say anything and get in trouble."  She was embarrassed.

The next incident she remembered "was at nighttime and . . . I would sleep in the bed with [appellant] and my mom.  And he would move me onto the floor while my mom would be asleep on the bed.  And he would lay behind me . . . .  He started off touching my breasts, and then he started to move his hands down to my pants."  I. was "confused and scared."

The next incident:  "Same thing.  We were in the room.  He would move me onto the floor and he'd lay behind me and he'd grab my breasts.  Then he'd move his hands down into my pants.  This time he inserted his fingers into my vagina."  She felt pain but did not say anything. "I was confused.  Scared.  I didn't want to end up like my brothers or my mom getting hit."

"The next time, same thing.  We'd be in the room.  He'd move me onto the floor.  He'd be behind me.  He'd start by touching my breasts, then he'd touch my vagina.  This time he pulled down my pants, and he began performing oral sex on me."  I. was still eight to nine years old at the time.  When asked how she felt, she said she "was always scared."

"The next time we were in the room, he laid me on the floor.  He was behind me.  Started by touching my breasts.  Then he touched my vagina.  Then he'd pull my pants down just a little

5

bit, and he would put his penis in between my butt." Appellant also inserted his penis into I.'s vagina "a little," which hurt. I. did not tell appellant that it hurt because she was "scared to speak up."

These sexually abusive encounters continued with I. testifying that she was "scared like always." Appellant's sexual abuse extended in time to oral sex which happened about once a week.

When the prosecutor asked her whether she ever felt that she could fight back, I. said no. When asked why not, she answered: "I was just a little girl. I felt like if I fought back I would get in trouble, or he would start hitting me the way he was hitting my mom and my brothers."

## DISCUSSION

## I. The Evidence Supports Appellant's Convictions of Penal Code Section 288 (b)(1)

Appellant contends he did not use more force than was necessary in the commission of the lewd acts themselves and that therefore he cannot be liable under subdivision (b)(1) of section 288. He relies in part on *People v. Schulz* (1992) 2 Cal.App.4th 999 (*Schulz*) and *People v. Senior* (1992) 3 Cal.App.4th 765 (*Senior*).

Appellant acknowledges *Schulz* and *Senior* have come under criticism for their strict interpretation of "force" by other Courts of Appeal. Apart from that, however, subdivision (b)(1) of section 288 is not limited to the use of force in committing a lewd act. Subdivision (b)(1) of section 288 applies when there is the "use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person."

In reviewing the record for substantial evidence (*People v. Redmond* (1969) 71 Cal.2d 745, 755), we draw all reasonable inferences in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Jackson* (2014) 58 Cal.4th 724, 749.)

We agree with the Attorney General that substantial evidence supports these convictions under the prosecution's theory of "duress." In charging the jury, the trial court defined "duress" as a "direct or implied threat of force, violence, danger, hardship, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed, or (2) acquiesce in an act to which one otherwise would not have submitted." The instruction also told the jurors that, "The total circumstances, including the age of the victim, and his/her relationship to defendant, are factors to consider in apprising the existence of duress." At the time appellant committed his sexual abuse on her, I. was a young child who was eight to nine years old.

Appellant claims that there "was no evidence that he utilized any direct or implied threat in accomplishing the lewd touchings of [I.] as would constitute duress." Not so. I. clearly testified to appellant's constant pattern of physical attacks on family members including her brothers — ostensibly to gain control over family members and their behavior. Appellant created this atmosphere of duress of which he took full advantage. In this home setting of constant violence, I. had every reason to believe appellant would attack her if she did not quietly submit. Time and time again, appellant showed himself to be a person who inflicted violence not only on I.'s mother, but also on

her brothers. I. relented because she believed appellant would physically harm her if she resisted.

"When the victim is young and is molested by her father in the family home, duress will be present in all but the rarest cases." (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1072–1073.) Substantial evidence supports these convictions under a theory of duress.

## II. Appellant's Sentences on Counts 21 Through 24 Must Be Modified

The acts alleged in counts 21 through 24 occurred between April 24, 2001 and April 23, 2004. "A criminal defendant is entitled to the application of statutes in effect at the time his offense was committed." (*People v. Gibson* (2016) 2 Cal.App.5th 315, 322, fn. 4.) At the time these offenses were committed, subdivision (b) of section 667.61 provided for a punishment of 15 years to life. It was not until 2010 that the penalty was increased to 25 years to life.

The sentences on these four counts must, therefore, be modified to the applicable punishment in existence at the time appellant committed these crimes – which is 15 years to life

## III. Appellant Forfeited His Challenge of the Fines and Fees Imposed By the Trial Court

Relying on *People v. Duenas* (2019) 30 Cal.App.5th 1157 (*Duenas*), and *U.S. v. Bajakajian* (1998) 524 U.S. 321, appellant contends the trial court's imposition of fines and fees is unconstitutional under both the Due Process Clause as well as the Excessive Fines Clause of the federal Constitution. On due process, appellant contends the trial court erred by not determining whether he had the ability to pay the fines and fees imposed. On the excessive fines argument, appellant contends

8

"the aggregate amounts of fines and fees imposed ($12,180), which does not include direct victim restitution in an amount to be determined [*sic*] are excessive under the Eighth Amendment."

Whether a court must consider a defendant's ability to pay before imposing fines and fees is an issue that is currently before our Supreme Court. (See *People v. Kopp* (2019) 38 Cal.App.5th 47 (*Kopp*), rev. granted, Nov. 13, 2019, S257844, and *People v. Hicks* (2019) 40 Cal.App.5th 320 (*Hicks*), rev. granted, Nov. 26, 2019, S258946.) *Kopp* followed *Duenas* in holding that a trial court should consider a defendant's ability to pay, while *Hicks* took a contrary view. Whatever the outcome will be, the fact is that currently, as well as at the time of appellant's sentencing, *Duenas* was and continues to be a reported decision of the Court of Appeal.

### A. Forfeiture

Appellant argues forfeiture does not apply because any objection on the imposition of fines and fees would have been futile. He claims that "[a]t the time appellant was sentenced, governing law offered scant grounds for objecting to the imposition to fees and fines upon a defendant sentenced to prison on grounds of inability to pay them." We are not convinced.

Appellant was sentenced on January 14, 2020. *Duenas* was decided a year before appellant's sentencing, i.e., on January 8, 2019. There is therefore no question that appellant was on notice of this decision. However, appellant did not object to any of the fines and fees that were imposed.

We have held the failure to object to fines and fees forfeits this issue. (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153–1154; *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1032–1033.) Since *Duenas* had been on the books for a full year by the

9

time appellant was sentenced, *Duenas* was not a "newly announced" decision which appellant could not have anticipated. Thus, a decision that exempted appellant from the requirement of an objection based on *Duenas* does not apply. (*People v. Castellano* (2019) 33 Cal.App.5th 485, 488.)

The general rule is that an appellate court will ordinarily not consider procedural defects or erroneous rulings where an objection could have been, but was not presented to the lower court by some appropriate method. (*People v. Jenkins* (2000) 22 Cal.4th 900, 1000.)

We see no reason to deviate from the general rule. An objection may have resulted in a hearing that would have resolved issues that are now completely speculative, such as appellant's ability to earn wages.[4] Instead of speculating about the relative size of the fines imposed, we would have a record that would have supplied some of the information necessary to determine whether the fines were excessive. In short, there are good reasons for requiring timely objections in the trial court and those reasons apply in this context, as well.

We conclude appellant has forfeited this issue.

**B. Ineffective Assistance of Counsel**

We do not agree that defense counsel's failure to object means, without more, that counsel was ineffective. "To secure reversal of a conviction for ineffective assistance of counsel, a defendant must establish that counsel's performance fell below an objective standard of reasonableness and that, to a reasonable probability, defendant would have obtained a more favorable result absent counsel's shortcomings. (*Strickland v. Washington*

---

[4] There is some evidence that appellant had a variety of vocational skills.

10

(1984) 466 U.S. 668, 687–694 [*Strickland*].)" (*People v. Kraft* (2000) 23 Cal.4th 978, 1068–1069 (*Kraft*).)

Here, appellant bears the burden to establish ineffective assistance on both deficient performance and prejudice. (*Strickland, supra*, 466 U.S. at p. 690.) The silent record, as here, does not establish either prong of the Strickland test. "If the record on appeal fails to show why counsel acted or failed to act in the instance asserted to be ineffective, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, the claim must be rejected on appeal." (*Kraft, supra,* 23 Cal.4th at pp. 1068–1069.) Here, we have no way to discern why trial counsel failed to object. As such, on this appeal, we reject appellants claim of ineffective assistance.

## DISPOSITION

The sentences on counts 21 through and including count 24 are vacated. The case is remanded with directions to enter new sentences on these counts of 15 years to life imprisonment. The court is directed to prepare and file a corrected abstract of judgment and to forward it to the Department of Corrections. In all other respects, the judgment is affirmed.

OHTA, J. *

We Concur:

GRIMES, Acting P. J.        STRATTON, J.

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11